**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSALIND A. CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01039-JAR |
| | ) | |
| LOUIS DEJOY,[1] | ) | |
| *Postmaster General* | ) | |
| *United States Postal Service*, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Motions for Summary Judgment filed by Defendant Louis Dejoy ("USPS") (Doc. 75) and Defendant American Postal Workers Union ("APWU"). (Doc. 120). USPS has filed a memorandum in support of its motion (Doc. 76) and statement of uncontroverted material facts ("USPS SUMF"). (Doc. 77). Plaintiff Rosalind A. Clayton initially filed a brief response (Doc. 81), and USPS replied. (Doc. 85). Plaintiff subsequently filed a more thorough response to the motion (Doc. 94) and to the USPS SUMF. (Doc. 96). USPS has replied to this subsequent response. (Doc. 104).[2] APWU has also filed a memorandum in support of its motion (Doc. 123) and statement of uncontroverted material facts ("APWU SUMF"). (Doc. 121).

---

[1] The Court takes notice that Louis DeJoy has replaced Megan J. Brennan as Postmaster General of the United States Postal Service effective June 15, 2020.

[2] USPS argues that Plaintiff's subsequent responses (Docs. 94, 96) were filed after the applicable deadline and should be disregarded. (Doc. 104 at 1-2). Considering that Plaintiff is proceeding pro se and in its discretion, this Court accepts the subsequent responses as the operative responses to USPS' Motion for Summary Judgment and the USPS SUMF. Plaintiff has expressly indicated that "this Court should proceed to consideration of the Motion for Summary Judgment already filed in this matter . . . [p]rovid[ed] this [C]ourt use the Plaintiff's correct Response to the [Motion for] Summary Judgment (Doc[s]. 94, 96)." (Doc. 138 at 1). Because this Court is accepting Plaintiff's delayed responses and proceeding to consider USPS' Motion for Summary Judgment, USPS' Motion for this Case to Proceed Without Discovery (Doc. 137) will be denied as moot.

Plaintiff Rosalind A. Clayton has filed a response (Doc. 133). Both motions are fully briefed and ready for disposition. For the reasons discussed below, both motions will be granted.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an African-American woman born in 1962, worked as a Mail Processing Clerk in USPS' Processing and Distribution Center in St. Louis, Missouri. (Doc. 77 at ¶¶ 1-2).[3] Plaintiff's bargaining unit is represented by APWU. (Doc. 121 at ¶ 4). At all relevant times, USPS and APWU have been parties to a collective bargaining agreement ("CBA"). (*Id.* at ¶ 2). Plaintiff was initially a member of APWU but terminated her membership in late 2017. (*Id.* at ¶ 6).[4]

Broadly speaking, Plaintiff claims that she was discriminated against by USPS on the basis of her race, age, gender, and disability status and that APWU breached its duty of fair representation to her. Plaintiff's Fourth Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), the Rehabilitation Act of 1973,

---

[3] This Court accepts as true all statements of material fact in both the USPS SUMF (Doc. 77) and APWU SUMF. (Doc. 121). Local Rule 4.01(E) provides that "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Plaintiff's response to the USPS SUMF accuses USPS' statements of being "deceptive, distorted, misleading and [ ] not factual" as well as "heavy coded." (Doc. 96 at 1). Plaintiff's response unhelpfully states "Denied" next to each of USPS' 152 factual statements, including those stating basic personal information about Plaintiff, while failing to provide any explanation for the denials. This clearly does not meet the requirements of Local Rule 4.1(E), and Plaintiff is therefore deemed to have admitted all facts set forth in the USPS SUMF. *See Wagner v. Brown*, No. 4:15-CV-01277 JAR, 2017 WL 3433630, at *1 n.2 (E.D. Mo. Aug. 10, 2017). Plaintiff has also failed to provide any response whatsoever to the APWU SUMF. Therefore, in accordance with Local Rule 4.01(E), all factual statements in the APWU SUMF are also deemed admitted.

The Court notes that Plaintiff's failure to properly respond does not mean summary judgment should be automatically granted. The undisputed facts as alleged by USPS and APWU still must establish that they are entitled to judgment as a matter of law. *Id.*

[4] Plaintiff claims she remained a member until December 20, 2017 (Doc. 41 at ¶ 3), but the local APWU President states that Plaintiff discontinued her membership effective October 16, 2017. (Doc. 121-1 at ¶ 8). The specific date Plaintiff's union membership was terminated is not material to the claims before this Court because APWU acknowledges it retained a duty of fair representation after termination.

29 U.S.C. §§ 701, *et seq.* ("Rehabilitation Act"), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"),[5] the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA"),[6] and the Federal Employee Compensation Act, 5 U.S.C. § 81 ("FECA"). (Doc. 41 at ¶ 1).

On December 2, 2016, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor concerning the allegations underlying the present complaint. (Doc. 77 at ¶ 3). Plaintiff filed a formal EEO complaint on March 8, 2017, and on August 7, 2018 the USPS issued a Final Agency Decision ("FAD") closing Plaintiff's complaint with no finding of discrimination. (Doc. 8-1 at 36).[7] Plaintiff declined to provide an affidavit in support of her EEO complaint, despite a

---

[5] The Court notes that federal employees claiming disability discrimination are protected by the Rehabilitation Act, not the ADA. The Court will address Plaintiff's claims relating to her alleged disability under the applicable Rehabilitation Act standards. There is generally not a meaningful difference between the material terms of the statutes, beyond that the Rehabilitation Act applies to federal employees. *See Lewis v. Johanns*, 180 F. App'x. 599, 601 (8th Cir. 2006).

[6] Plaintiff's Fourth Amended Complaint briefly states that Plaintiff is pursuing a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Doc. 41 at 1). At the outset, the Court notes that this claim is not properly plead because USPS is not an "employer" as defined under the LMRA. 29 U.S.C. §§ 152(a)(2); 471.4(a)(1).

Construing the complaint liberally, however, the Court takes notice that 39 U.S.C. § 1208(b) is identical to 29 U.S.C. § 185 in all relevant respects but applies to USPS employees. *See Abernathy v. U.S. Postal Serv.*, 740 F.2d 612, 614 (8th Cir. 1984). A hybrid claim may therefore proceed under 39 U.S.C. 1208(b).

A hybrid claim "combines a straightforward § 301 breach-of-contract suit against an employer with a suit against the union for breach of the union's duty of fair representation." *Livingstone v. Schnuck Market, Inc.*, 950 F.2d 579, 581 (8th Cir. 1991). To recover against an employer or union for breach of a collectively bargained agreement under a hybrid claim, "employees must first prove that their union breached its duty of fair representation." *Barlow v. Am. Nat'l Can Co.*, 173 F.3d 640, 642 (8th Cir. 1999). "[T]he two claims are inextricably interdependent," and to "prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164-65 (1983) (quoting *United Parcel Servs., Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981) (Stewart, J., concurring)). The takeaway from this extensive background is that Plaintiff must demonstrate a breach of the duty of fair representation in order to make any hybrid claim against USPS or APWU. Because this Court finds that a reasonable factfinder could not conclude that Plaintiff has made such a demonstration, Plaintiff also cannot make out a hybrid claim against either USPS or APWU.

[7] Plaintiff originally requested a hearing before an Equal Employment Opportunity Commission Administrative Law Judge. Plaintiff then withdrew her request for a hearing, and the case was remanded to USPS to make a Final Agency Decision. (Doc. 8-1 at 2).

specific request by the EEO Investigator. (*Id.* at 14). After the FAD, Plaintiff properly elected to pursue her claims in this Court rather than appeal to the Equal Employment Opportunity Commission.

Plaintiff's Fourth Amended Complaint includes various allegations against USPS which were not addressed in the FAD. USPS previously moved to dismiss a substantial portion of the complaint, arguing that Plaintiff had not exhausted those allegations which were not addressed in Plaintiff's EEO complaint and the FAD. (Doc. 53). On August 5, 2020, this Court granted the motion and held that Plaintiff may only proceed against USPS on those "[a]llegations of discrimination by USPS that were raised in Plaintiff's March 8, 2017 complaint." (Doc. 97 at 9).[8] Accordingly, the only claims at issue in this motion for summary judgment by USPS are those addressed by the FAD. The FAD describes 18 claims forming the basis for Plaintiff's EEO complaint, which can be roughly categorized as follows:

> **Compensation Claims:** Claims #1, #14, #17, and #18 all allege that USPS, in various forms, failed to properly compensate Plaintiff.
>
> **Verbal Harassment Claims**: Claims #2 and #3 allege that Plaintiff was yelled at and called a snitch by her supervisor.
>
> **General Harassment Claims**: Claims #4 through #9, #13, #15, and #16 allege that Plaintiff was subjected to harassment in the workplace and that she was excessively scrutinized by her supervisor. Many of these claims (#4, #7, #9, #15, #16) concern Plaintiff's schedule and station.
>
> **Medical Claims**: Claims #10 through #12 allege that Plaintiff was denied reasonable accommodation for her medical restrictions and that her medical documentation was improperly rejected.

---

[8] The Court notes that there has been some confusion regarding the remaining claims against USPS. The Court has now repeatedly clarified, however, that Plaintiff may only proceed against USPS on those claims raised in her March 8, 2017 EEO complaint and addressed in the FAD. (*See* Docs. 119, 127, 134). The FAD is entered as both Document 8-1 and Document 41-1 in the docket.

4

As to APWU, Plaintiff claims that APWU "repeatedly failed to process any [ ] wage dispute grievances" and ignored various other grievances relating to station reassignment, working without a partner, being moved among machines, being required to work hard, and unjust discipline. (Doc. 41 at ¶ 1; Doc. 123 at 4). APWU previously moved to dismiss substantial portions of Plaintiff's claims as time-barred. (Doc. 50). Pursuant to the six-month statute of limitations for claims that a union failed to represent a member, this Court dismissed all claims arising on or before December 25, 2017. (Doc. 97 at 4).[9] Accordingly, the only remaining claims to be addressed in this motion for summary judgment are those alleging that APWU breached its duty of fair representation after December 25, 2017. Plaintiff's remaining claims against APWU can be categorized as follows:

    (1) **Post-Membership Representation**: APWU failed to represent Plaintiff after she terminated her APWU membership. (Doc. 41 at ¶ 70).

    (2) **Workers' Compensation Retaliation**: APWU retaliated against Plaintiff for filing a workers' compensation claim. (*Id.* at ¶¶ 69-77).

    (3) **Grievance Claims**: APWU failed to meaningfully pursue meritorious grievances regarding:

        a. <u>Reassignment</u> (*Id.* at ¶¶ 70-71, 73-77, 81, 93, 98-100)

        b. <u>Continuation of Pay</u> (*Id.* at ¶¶ 55, 90, 94-95)

        c. <u>Working Without Partner</u> (*Id.* at ¶¶ 79, 86, 88, 91)

        d. <u>Moved Among Machines</u> (*Id.* at ¶¶ 91, 102, 110)

        e. <u>Excessive Supervision</u> (*Id.* at ¶¶ 80, 82-83, 97)

        f. <u>Unjust Discipline</u> (*Id.* at ¶ 62)

---

[9] Plaintiff's response to APWU's motion for summary judgment argues that this Court "failed to specify what specific claims [Plaintiff] can proceed on" against APWU and that this Court's previous Memorandum and Order was "vague and evasive." (Doc. 133 at 2). Plaintiff made similar arguments in a Motion to Alter or Amend Judgment and Reinstatement of Cause under Fed. R. Civ. P. 59(e) (Doc. 113), and such motion was denied. (Doc. 119). This Court has been clear that those claims against APWU which arose on or before December 25, 2017 are time-barred. Plaintiff has not requested clarification of this holding, as her motions for clarification have only addressed the claims against USPS.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because Plaintiff is proceeding pro se, however, this Court liberally construes her complaint and other submissions. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III.     ANALYSIS – USPS MOTION FOR SUMMARY JUDGMENT

### A.   <u>FEDERAL EMPLOYEE COMPENSATION ACT</u> ("FECA")

Plaintiff claims that USPS failed to pay 21 days of Continuation of Pay ("COP") wages owed as a result of Plaintiff suffering a traumatic brain injury ("TBI") at work on May 27, 2016. (Doc. 41 at ¶¶ 4-10). This is Plaintiff's "chief complaint." (Doc. 94 at 1). USPS argues that this

Court lacks jurisdiction over the claim because FECA decisions are not subject to judicial review. (Doc. 85 at 2-3).[10]

FECA provides that the Secretary of Labor's decision allowing or denying payment is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). "The plain meaning of section 8128 shows Congressional intent 'to bar judicial review altogether.'" *Brumley v. U.S. Dep't of Labor*, 28 F.3d 746, 747 (8th Cir. 1994) (quoting *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779-80 (1985)). Review is available, however, if Plaintiff can demonstrate a violation of the Constitution or a clear statutory mandate. *Id.* Contrary to USPS' description, Plaintiff's claim is not that the Department of Labor made an incorrect decision as to her benefits, but that Plaintiff simply did not receive benefits she was deemed owed.

FECA was created as a matter of "legislative compromise: 'for employees, the right to receive benefits regardless of fault; for the Government, immunity from suit.'" *Holland v. U.S. Dep't of Veteran Affairs*, No. 14-2441 (MJD/BRT), 2015 WL 3450181, at *3 (D. Minn. 2015) (quoting *Pourier v. United States*, 138 F.3d 1267, 1267 (8th Cir. 1998)). The statute has been referred to as a "model preclusion-of-review statute." *Brumley*, 28 F.3d at 747 (citing *Lindahl*, 470 U.S. at 779-80). A reasonable argument can be made that USPS violated a clear statutory mandate if it found Plaintiff was owed COP but simply failed to make proper payment. Given Congress' intent to bar all forms of judicial review in cases arising under this statute, however, this Court finds that it lacks jurisdiction over Plaintiff's claim.

---

[10] Portions of this claim precede Plaintiff's EEO complaint and have accordingly been dismissed pursuant to this Court's prior order. However, USPS has separately replied to this claim by arguing that this Court lacks jurisdiction. This Court will address the jurisdictional question under FECA but notes that much of this claim has not been administratively exhausted.

Alternatively, the Court finds that Plaintiff has not provided sufficient evidence to establish a genuine issue of material fact. Plaintiff repeatedly alleges that USPS has "stolen 21 days of COP." (Doc. 94 at 2). Plaintiff provided copies of her pay stubs, but fails to specifically indicate where COP payment was improperly denied. Instead, Plaintiff restates the assertion that she was owed COP "[f]rom May 28, 2016 through August 24, 2016," which is far longer than the maximum allotment of 45 days. On January 14, 2019, a Health & Resource Management Specialist from USPS stated that Plaintiff had "been paid the COP due to you . . . except for the initial Pay Period 12, in which adjustments of COP were given to you in Pay Period 14 of 2016," and attached copies of Plaintiff's pay stubs accordingly. (Doc. 41-7 at 13). Plaintiff's bare allegations that USPS failed to pay 21 days of COP do not constitute "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986).

## B.  DISPARATE TREATMENT

Plaintiff claims that USPS engaged in disparate treatment discrimination in violation of Title VII, the ADEA, and the Rehabilitation Act. In order to make a prima facie claim of discrimination under each of these statutes, Plaintiff must demonstrate that she suffered an adverse employment action. *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005) (Title VII); *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136 (8th Cir. 2006) (ADEA); *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) (Rehabilitation Act). This Court agrees with USPS that none of Plaintiff's 18 claims rise to the level of an adverse employment action.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 671 (8th Cir. 2006) (quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)). "Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse

employment action." *Brasch v. Peters*, 479 F. Supp. 2d 1045, 1065 (E.D. Mo. 2007) (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003)).

### Compensation Claims

Plaintiff's Compensation Claims allege that USPS failed to properly compensate Plaintiff, albeit for relatively small amounts of money. A reduction of pay may constitute adverse employment action "regardless of the dollar amount of the reduction." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016). Federal courts have generally found, however, that when pay is erroneously withheld and then restored, the "allegation is the sort of *de minimis* personnel matter that courts have dismissed as not constituting adverse employment actions." *See Blake v. Potter*, No. 03 Civ. 7733(LAP), 2007 WL 2815637 (S.D.N.Y. Sept. 25, 2007) (holding no reasonable factfinder could conclude postal worker not being timely paid 1.5 hours of approved leave constituted adverse employment action).

Each of Plaintiff's Compensation Claims allege *de minimis* errors which were ultimately corrected and therefore cannot constitute adverse employment action. In Claim #1, Plaintiff alleges that she did not receive higher level pay for working in the Express Mail unit in late 2016. Plaintiff informed Supervisor Bobo of this issue and received an additional $752.97 on the first pay date of 2017. (Doc. 77 at ¶¶ 56-57). Plaintiff argues that she is owed more than this amount but provides no supporting evidence for this claim, and Supervisor Bobo testified that she calculated the proper amount owed. (*Id.* at ¶ 60). As to Claim #14, Plaintiff argues she was improperly denied two hours of overtime pay, but the pay adjustment was ultimately processed. (*Id.* at ¶ 126). Both Claims #17

and #18 also concern errors in payroll by USPS and denials of discretionary pay advances to correct the errors. The record reflects that errors were made by new and inexperienced supervisors, but Plaintiff subsequently received the correct compensation after a pay adjustment. (*Id.* at ¶¶ 142-152).

For each of the Compensation Claims, Plaintiff eventually received the appropriate compensation. Where Plaintiff continues to allege that she has not received full compensation (Claim #1), Plaintiff has not provided evidence sufficient to establish a genuine issue of material fact. A reasonable factfinder could not conclude that the Compensation Claims constitute an adverse employment action under applicable law.

### *Verbal Harassment Claims*

In Claims #2 and #3, Plaintiff alleges that she was yelled at by Supervisor Bobo in front of her co-workers and called a snitch for complaining about another employee eating on the workroom floor. Verbal reprimands generally do not rise to the level of an adverse employment action unless they result in a tangible change in working conditions. *Anderson v. Dillard's Inc.*, 109 F. Supp. 2d 1116, 1127 (E.D. Mo. 2000) ("For these reasons, the Court rejects Plaintiff's assertion that a verbal reprimand is an adverse employment action."); *see also Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("We have held that formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action."). Claims #2 and #3, involving discrete reprimands with no associated effect on Plaintiff's tangible working conditions, do not rise to the level of an adverse employment action.

*General Harassment Claims*

Claims #5, #7, and #15 generally allege that Supervisor Bobo temporarily assigned Plaintiff to undesirable machines away from co-workers. Plaintiff cites no precedent suggesting that a temporary reassignment among machines, all of which fall within Plaintiff's job duties, can constitute an adverse employment action. Even in the case of transfer to an entirely different office, the Eighth Circuit has held that such transfer is only an adverse employment action if it "results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000). Changes in duties or working conditions that cause no materially significant disadvantage do not establish adverse employment action. *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). Plaintiff does not allege that these reassignments meaningfully altered her working conditions. A reasonable factfinder could not conclude that Plaintiff's temporary reassignments constituted adverse employment actions.

In Claims #9 and #16, Plaintiff alleges that her schedule was changed to a less desirable shift. Transferring an employee to a less desirable shift without any accompanying significant change in working conditions is not an adverse employment action. *See Warr v. Hagel*, 14 F. Supp. 3d 1244, 1252 (E.D. Mo. 2014) (citing *Shockency v. Ramsey County*, 493 F.3d 941 (8th Cir. 2007)). Plaintiff's shift required temporary adjustment while Plaintiff was on limited duty due to her injuries. (Doc. 77 at ¶¶ 129-137). Plaintiff's primary issue with the shift change was that it resulted in her not being able to select her partner or machine for the given shift. (*Id.* at ¶ 129). This does not constitute a significant change in working conditions and therefore does not rise to the level of an adverse employment action. *See Kelso v. Pilot Travel Ctrs.*, No. 10-0814-CV-W-

ODS, 2011 WL 6130919, at *4 (W.D. Mo. Dec. 8, 2011) (changes in shift assignments are not adverse employment actions).

In Claims #4, #5, #8, and #13, Plaintiff alleges various forms of harassment, typically by Supervisor Bobo. In Claim #8, for example, Plaintiff states she was not allowed to have water on the workroom floor while co-workers had food and water on the floor without issue. In Claim #13, Plaintiff alleges that she was not timely provided with the form to obtain a replacement time card. While the Court certainly empathizes with Plaintiff and understands the frustration of working in such an environment, these claims simply do not rise to the level of adverse employment actions as required to establish a claim for disparate treatment. *See Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 969 (8th Cir. 1999).

*Medical Claims*

In Claims #10-12, Plaintiff alleges that she was required to work beyond the scope of her medical restrictions and that her medical documentation was rejected without justification. Supervisor Bobo testified that Plaintiff refused to provide updated medical documentation in early 2017, and that the statement on which Plaintiff was relying was illegible. (Doc. 77 at ¶¶ 106-109).

The Court recognizes that failure to accommodate a medical disability may constitute an adverse employment action. The Eighth Circuit has explicitly held that a failure to accommodate is an adverse employment action in and of itself. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006). Plaintiff, however, has not established a genuine issue of material fact as to whether she was denied reasonable accommodations. Instead, it has been established that Plaintiff "was assigned tasks with temporary limitations, and only returned full-time to the machine after her medical restrictions expired and Plaintiff failed to provide a current physician's statement." (Doc. 77 at ¶ 36). This finding is consistent with the FAD, which states that management "did

12

allow [Plaintiff] to work 2 hours off the machines when her medical documentation provided for such a restriction, and only made the [Plaintiff] go back to the machine full time after her medical restrictions had expired and [Plaintiff] had failed to provide updated medical restrictions." (Doc. 8-1 at 24). Therefore, a reasonable factfinder could not conclude that Plaintiff was denied accommodations or suffered an adverse employment action.

USPS' request that Plaintiff provide updated and legible medical documentation supporting her disability also does not constitute an adverse employment action. "If the employee's need for an accommodation is not obvious, the employer may also request additional documentation or clarification to support the request." *Grell v. Dep't of Energy*, No. 18-3101-CV-S-BP, 2019 WL 10888146, at *5 (W.D. Mo. Apr. 17, 2019).

This Court finds, therefore, that Plaintiff has not experienced an adverse employment action and accordingly cannot establish a prima facie case of disparate treatment. As discussed below, even if Plaintiff had established adverse employment action, her claims fail for other reasons under the unique elements of the respective statutes' disparate treatment requirements.

### (i)        Disparate Treatment under Title VII

Plaintiff contends that USPS engaged in disparate treatment discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 (covering federal employees). An employee is not required to provide direct evidence to prove racial discrimination under Title VII. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 98-101 (2003). Instead, an employee can establish a prima facie claim of discrimination by showing that (1) she is a member of a protected group; (2) she was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected group were treated differently. *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005) (citing *Gilmore v.*

13

*AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[11] If Plaintiff can make such a prima facie case, the burden shifts to USPS to establish a legitimate, non-discriminatory reason for the adverse employment action. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

USPS acknowledges that Plaintiff was a member of a protected class and meeting her employer's expectations but contends Plaintiff neither suffered an adverse employment action nor demonstrated that similarly situated employees who were not members of the protected group were treated differently. As discussed above, this Court finds that Plaintiff did not suffer an adverse employment action and therefore failed to establish a prima facie case of disparate treatment under Title VII.

In the alternative, the Court also finds that Plaintiff has failed to demonstrate that similarly situated employees who were not members of the protected group were treated differently. As to the Medical Claims, for example, Plaintiff's complaint only states that a "younger male . . . in his twenties" was able to work the manual flats section without a medical statement. (Doc. 41 at ¶ 29). Plaintiff's also alleges without further detail that "[three] young male co-workers" were assigned to a machine despite Plaintiff having more seniority. (Doc. 41 at 5).

The fourth prong of the *McDonnell-Douglas* test is "rigorous and requires that other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to other employees." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001)). Plaintiff has the burden of providing the Court with "specific, tangible evidence that employees who were

---

[11] Plaintiff did not specifically state that she was relying on circumstantial evidence to prove discrimination. Since Plaintiff did not provide direct evidence of discrimination and repeatedly insisted that this Court adopt the burden-shifting framework of *McDonnell Douglas Corp.* (Doc. 94 at 2), this Court assumes that Plaintiff is relying on circumstantial evidence to prove disparate treatment.

similarly situated in all respects to [her] received different treatment from" the employer. *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Plaintiff has provided the Court with virtually no information regarding these allegedly similarly situated employees. Plaintiff's bare allegations regarding the treatment of other employees simply do not include sufficient evidence for this Court to reach a conclusion that such employees were similarly situated and treated differently. Therefore, Plaintiff cannot make out a prima facie case of discrimination.[12]

Finally, even if Plaintiff were able to make out a prima facie case of discrimination, this would only shift the burden to USPS to "present evidence of a legitimate, nondiscriminatory reason for its adverse employment action." *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). If such evidence is presented, the burden shifts back to Plaintiff "to prove that the proffered reason is pretextual." *Id.* at 831-32. Supervisor Bobo and other employees provided numerous legitimate, nondiscriminatory reasons for their actions, and Plaintiff has not provided any evidence permitting a reasonable factfinder to conclude that these statements were pretextual. For example, as to Claim #1, Supervisor Bobo testified that she had other employees who experienced the same issue and it was corrected when brought to her attention. Plaintiff has not come forward with 'specific facts showing that there is a genuine issue for trial'" on this matter. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)). "[T]he record is devoid of evidence suggesting that race, gender, or age had any role in [USPS'] decision-making." *Harris v. Esper*, No. 4:18-CV-00690-JAR, 2019 WL 5213027, at *6 (E.D. Mo. Oct. 16, 2019).

---

[12] With regard to Claim #1, Plaintiff's EEO complaint lists 11 employees who supposedly received higher level play, unlike Plaintiff. (Doc. 76-4 at 62). It is not clear whether these individuals are truly similarly situated. Moreover, Plaintiff provides no evidence rebutting Supervisor Bobo's statement that she treated Plaintiff like these other employees by promptly correcting the error when it was presented to her. (Doc. 8-1 at 28).

### (ii)     Disparate Treatment under the ADEA

The ADEA provides that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).[13] The Supreme Court has recently held that a plaintiff seeking backpay or compensatory damages, as Plaintiff does here, must show that age was a but-for cause of the employment outcome. *Babb v. Wilkie*, 140 S. Ct. 1168 (2020).

To establish a prima facie case of age discrimination, Plaintiff must prove she (1) was at least forty years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) similarly situated employees outside the class were treated more favorably. *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007). "In a disparate treatment case, liability depends on whether the protected trait – under the ADEA, age – actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Plaintiff has failed to establish a genuine issue of material fact as to whether similarly situated employees who were not over forty years old were treated differently because of their age. In fact, as the FAD notes, "most of the alleged comparators are the same age as complainant or older than her." (Doc. 8-1 at 27). Therefore, Plaintiff cannot make out a prima facie case of age discrimination. While Plaintiff checked the ADEA box in her Employment Discrimination Complaint, moreover, she has failed to make any substantive allegation that she was discriminated against on the basis of her age. Plaintiff's complaint does state that a "younger male . . . in his twenties" was able to work the manual flats section without a medical statement (Doc. 41 at ¶ 29), but she does not "allege a causal connection between [her] age and the adverse employment

---

[13] Plaintiff consistently cites to § 623 of the ADEA, but § 633a is the operative statute for USPS employees.

action." *Gafford v. McDonald*, No. 4:14-CV-01603 JAR, 2015 WL 4651827, at *5 (E.D. Mo. Aug. 5, 2015). Based on the facts before this Court, a reasonable factfinder could not conclude that Plaintiff experienced an adverse employment action because of her age.

      **(iii)    Disparate Treatment and Failure to Accommodate under the Rehabilitation Act**

      Plaintiff alleges disability discrimination under the Rehabilitation Act. There are two applicable types of claims under the Rehabilitation Act: disparate treatment and failure to provide a reasonable accommodation of a person's known disability. 29 U.S.C. § 794(a), concerning disparate treatment, states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination . . . under any program or activity conducted by any Executive agency." A prima facie case of disparate treatment under the Rehabilitation Act requires that the Plaintiff was (1) disabled; (2) qualified to perform the essential functions of her job; and (3) suffered an adverse employment action because of her disability. *R.N. ex rel. Nevill v. Cape Girardeau 63 School Dist.*, 858 F. Supp. 2d 1025, 1031 (E.D. Mo. 2012). To make a successful claim under the Rehabilitation Act, Plaintiff must ultimately demonstrate that her disability was the "sole impetus" for the adverse action. *Johnson v. Special School Dist. of St. Louis County*, No. 4:18-CV-53 JCH, 2018 WL 2163647, at *10 (E.D. Mo. May 10, 2018) (quoting *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006)).

      A modified version of the *McDonnell-Douglas* burden shifting framework applies to failure to accommodate claims under the Rehabilitation Act. To establish failure to accommodate a disability, Plaintiff must show that (1) she was an individual with a disability; (2) her disability was known to USPS; (3) she made a request for a reasonable accommodation because of such

disability; and that (4) USPS failed to make reasonable accommodations. *See Peebles v. Potter*, 354 F.3d 761 (8th Cir. 2004).

USPS argues that Plaintiff was not an individual with a disability as defined under the Rehabilitation Act. An individual with a disability must have a "physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(20)(A). Interpreting the Rehabilitation Act, the Eighth Circuit has stated that "statutory disability requires permanent or long-term limitations." *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997).

Plaintiff alleges that on May 28, 2016 she suffered a TBI which resulted in post-traumatic stress and a neck-injury. (Doc. 77 at ¶ 25). Plaintiff's physician permitted her to return to her work on August 24, 2016, though Plaintiff remained on light duty allowing her to sit when needed. (*Id.* at ¶ 27). Plaintiff's restrictions decreased over time, and by March 28, 2017, Plaintiff was able to work without any medical restrictions or limitations. (*Id.* at ¶ 37).

A reasonable factfinder could not conclude that Plaintiff suffered from a physical or mental impairment which resulted in a substantial impediment to employment. Plaintiff was able to work full eight-hour shifts, albeit on light duty, and her restrictions were unquestionably temporary. Plaintiff has provided no evidence demonstrating that her injuries substantially interfered with major life activities or acted as an impediment to employment. While Plaintiff appears to have suffered a serious injury at work, Plaintiff did not qualify as an individual with a disability under the Rehabilitation Act. Accordingly, she cannot make out a prima facie case of disparate treatment or failure to accommodate.

In the alternative, this Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether she was discriminated against or denied an accommodation. As

discussed above, Plaintiff was originally assigned light duty tasks and only returned to full duty after her medical restrictions expired and Plaintiff failed to provide an updated statement from her physician. (Doc. 77 at ¶ 36). Plaintiff's alleged disability was accommodated during the time period in which Plaintiff provided USPS with the required medical documentation.

C.  HOSTILE WORK ENVIRONMENT

Plaintiff alleges that she was subjected to a hostile work environment. While Plaintiff does not specify the statute on which she relies for this argument, USPS has appropriately noted that the definitions and standards for hostile work environment claims under Title VII, the Rehabilitation Act, and the ADEA are substantially similar. In order to succeed on a hostile work environment claim, Plaintiff must demonstrate she was "subject to unwelcome harassment, that the unwelcome harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003)).

Such a finding requires evidence that the environment was "both subjectively and objectively offensive" and "extreme in nature and not merely rude or unpleasant." *Id.* at 779 (quoting *Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009)). This Court must "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interfere[d] with [Plaintiff's] job performance." *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 655 F.3d 977, 981 (8th Cir. 2010). A hostile work environment, however, need not cause a tangible psychological injury. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

19

In her response to USPS' motion for summary judgment, Plaintiff contends that she was harassed by supervisors and co-workers "on a continuous daily basis" and such harassment was "pervasive, egregious, malicious and intentional." (Doc. 94 at 46). She cites the following examples as evidence of harassment:

> [M]y 2 hours of reasonable accommodation, not being issued a partner and machine, being moved to 2-4 different machine[s] per shift, being kicked off the machine so that my younger non-career co-workers could work the machine while I was being sent outside the unit that I have bid to work in. Long story short I was constantly requesting equal employment rights, benefits and privileges oftentimes that led to a[] hostile work environment and I was being abused by management. (*Id.*).

A reasonable factfinder could not determine that such activities amounted to a hostile work environment. Plaintiff has not alleged pervasive abusive, vulgar, or offensive behavior. Rather, she has alleged a variety of isolated instances resulting in minor inconveniences. Plaintiff was never physically threatened or humiliated; her supervisors did not use offensive language against her; and there is no indication that the behavior meaningfully interfered with her ability to perform her job. Moreover, Plaintiff's description of many of the supposedly hostile acts by USPS supervisors and employees are directly contradicted by the USPS SUMF. "There can be no doubt that federal harassment standards are demanding." *Al-Zubaidy v TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). There is no material fact in dispute which would allow a reasonable person to conclude that Plaintiff has met these demanding standards.

Plaintiff has also failed to provide any evidence suggesting that the supposedly hostile work environment was based on her membership in a protected class. Plaintiff references her membership in a protected class but identifies no causal connection to the allegedly hostile work environment. As USPS notes, virtually all of the supervisors and employees Plaintiff makes claims against are members of the same protected classes. (Doc. 77 at ¶ 7). The only evidence that Plaintiff

has put forth with regard to the causal connection between her protected class status and USPS' conduct are her own conclusory allegations of harassment. *See Stevenson v. Best Buy Corp.*, No. 4:03-CV-01188, 2005 WL 3434770, at *5 (E.D. Mo. Dec. 14, 2005).

### D.  RETALIATION

"In order to prove retaliation, a plaintiff must show, 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 552 (8th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 60). This Court has determined that Plaintiff did not suffer a discrete adverse employment action constituting disparate treatment. In the context of retaliation claims, however, the Eighth Circuit has stated that "it is proper to consider the cumulative effect of an employer's alleged retaliatory conduct." *Fercello v. County of Ramsey*, 612 F.3d 1069, 1083-84 (8th Cir. 2010).

When considering the cumulative effects of USPS' conduct, "context matters," and the ultimate impact of such conduct "depends on a constellation of the words used or the physical acts performed." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). Considering the full context, this Court finds that Plaintiff's case "illustrates a scattered assortment of actions that are either petty, unsubstantiated, or otherwise causally unrelated to [Plaintiff's] protected conduct." *Id.* at 1084. Accordingly, the actions taken by USPS do not amount to an adverse employment action even when considered in the aggregate, and would not have dissuaded a reasonable worker from making a charge of discrimination.

### (i)       Retaliation under Title VII

Plaintiff claims that she was retaliated against after engaging in protected activity under Title VII. To establish a prima facie case of retaliation under Title VII, Plaintiff must show (1) that she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). "Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can either be opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII." *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Beyond making a prima facie case, to fully prove a claim of retaliation under Title VII, Plaintiff must demonstrate that her protected activity was a but-for cause of the adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Blomker v. Jewell*, 831 F.3d 1051 (8th Cir. 2016).

Based on the allegations in Plaintiff's Fourth Amended Complaint and the facts before this Court, Plaintiff has not established a genuine issue for trial for retaliation under Title VII. Plaintiff clearly engaged in protected activity by filing an EEO complaint. *Id.* (citing *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006)). As stated above, however, this Court has determined that the 18 claims before this Court do not rise to the level of an adverse employment action, either individually or in the aggregate. Plaintiff has also failed to submit meaningful evidence demonstrating any causal connection between the allegedly adverse employment actions and her protected activity.

Plaintiff only establishes temporal proximity between her protected activity and the adverse employment action. Plaintiff claims: "After I suffered a job-related traumatic injury [on May 27,

22

2016,] USPS immediately began stealing night differential and Sunday Premium." (Doc. 94 at 31). "[M]ore than temporal proximity is needed to show a causal link between the [adverse employment action] and filing of an EEOC complaint." *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005).

Construing Plaintiff's complaint and briefs liberally, she appears to argue that, as a literal matter, many of the alleged adverse employment actions would not have happened but for her having requested an accommodation. Plaintiff contends: "Immediately after I suffered a job related TBI[,] USPS . . . denied me reasonable accommodation." (Doc. 94 at 31). The Eighth Circuit has clearly held that "causal link" requires "a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208-09 (2d Cir. 1990)). Plaintiff provides no basis on which a reasonable factfinder could conclude that USPS' adverse employment actions had any retaliatory motive. Accordingly, Plaintiff has not made out a prima facie case of retaliation under Title VII.

### (ii)    Retaliation under the ADEA

Plaintiff also argues that she was retaliated against after engaging in protected activity under the ADEA. The Supreme Court has held that the ADEA's federal sector provision, 29 U.S.C. § 633a(a), covers retaliation based on the filing of an age discrimination complaint. *Gomez-Perez v. Potter*, 553 U.S. 474 (2008). To establish a prima facie case under this statute, Plaintiff must again demonstrate she (1) engaged in protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the protected activity and adverse action. *Kneibert v. Thomson Newspaper, Michigan Inc.*, 129 F.3d 444, 454 (8th Cir. 1997).

Filing an EEO complaint alleging age discrimination clearly constitutes protected activity under the ADEA. *Harris v. Gateway Region YMCA*, No. 4:18-CV-01181 JCH, 2018 WL 4952443, at *2 (E.D. Mo. Oct. 12, 2018). As with Plaintiff's claim for retaliation under Title VII, however, Plaintiff cannot make out a prima facie case because she did not experience an adverse employment action. Plaintiff also cannot demonstrate any causal link between her engaging in protected activity (filing an EEO complaint alleging age discrimination) and any action taken by her employer.

**(iii)      Retaliation under the Rehabilitation Act**

Finally, Plaintiff argues that she was retaliated against under the Rehabilitation Act. Again, much of this Court's analysis regarding Plaintiff's prima facie case for retaliation under Title VII is applicable here. To make out a prima facie case for retaliation under § 504 of the Rehabilitation Act, Plaintiff must show she (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) there is a causal connection between the two. *Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015).[14] EEO complaints are recognized as protected activity under the Rehabilitation Act. *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000). Requesting reasonable accommodations also constitutes protected activity. *Kirkeberg v. Can. Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2000) (requesting an accommodation is protected activity under the ADA).

Plaintiff, however, did not experience an adverse employment action. This Court has found that Plaintiff did receive reasonable accommodations and was able to work on light duty for a medically appropriate period of time. As discussed regarding Plaintiff's disparate treatment claim

---

[14] The Court determined that Plaintiff could not make a claim for disparate treatment under the Rehabilitation Act in part because she is not an "individual with a disability." Plaintiff need not be an individual with a disability to make a claim for retaliation, however. *See Heisler v. Metropolitan Council*, 339 F.3d 622 (8th Cir. 2003) (no disability required for retaliation claim under the ADA).

under the Rehabilitation Act, Plaintiff "was assigned task within the temporary limitations, and only returned full-time to the machine after her medical restrictions expired and Plaintiff failed to provide a current physician's statement." (Doc. 77 at ¶ 36). There is simply not sufficient evidence for a reasonable factfinder to conclude that the alleged retaliation, denial of Plaintiff's request for accommodation, actually occurred.

Even if Plaintiff could demonstrate that she suffered an adverse employment action, Plaintiff has not provided any evidence (beyond her bare assertions) demonstrating a causal link between her protected activities and such actions. Plaintiff makes temporal connections but fails to otherwise demonstrate that USPS acted with retaliatory motive in response to Plaintiff's engaging in protected activity. Accordingly, Plaintiff has not come forward with specific facts permitting a factfinder to determine there has been retaliation under the Rehabilitation Act.

## IV.  ANALYSIS – APWU MOTION FOR SUMMARY JUDGMENT

"The failure to oppose a basis for summary judgment constitutes a waiver of that argument." *Wegmann v. Ethicon, Inc.*, No. 4:20-CV-00704-JAR, 2020 WL 5814475, at *11 (citing *Satcher v. Univ. of Arkansas Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). In *Satcher*, the Eighth Circuit held that, in response to a properly supported motion for summary judgment, it is a "party's responsibility to show that there were genuine issues of material fact in the record that precluded the summary judgment." 558 F.3d at 734; *see also Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

Plaintiff has entirely failed to respond to the arguments in APWU's motion for summary judgment. Instead, Plaintiff repeatedly alleges that the motion constitutes an "abusive extra pleading" because this Court has already "dismissed the majority of the Plaintiff['s] claims against

25

APWU." (Doc. 133 at 1). Plaintiff claims that she cannot respond to a 462-page document[15] and has accordingly "shown a good cause" why she is "not going to reply" to APWU's summary judgment motion. (*Id.*). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Because Plaintiff has not opposed any of APWU's bases for summary judgment, she has waived all of her claims against APWU per the Eighth Circuit's holding in *Satcher*. In the alternative, this Court will proceed to address the substance of APWU's motion for summary judgment.

As the exclusive bargaining agent for employees like Plaintiff, APWU had a duty to represent Plaintiff in a fair manner. The duty of fair representation "arises … from the grant under § 9(a) of the NLRA … of the union's exclusive power to represent all employees in a particular bargaining unit." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 86-87 (1989). The duty provides that a "union must represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements." *Int'l Bd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979).[16]

A breach of the duty of fair representation only occurs, however, when "a union's conduct toward a bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "Mere negligence, poor judgment or ineptitude by a union is insufficient to establish a breach of the duty of fair representation." *Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir. 1998).

---

[15] The Memorandum in Support of APWU's Motion for Summary Judgment (Doc. 123) is 12 pages, which is appropriate given the limit under the local rules is 15 pages. E.D.Mo. L.R. 4.01(D). Plaintiff is presumably referring to the exhibits attached to the APWU SUMF. APWU helpfully attached copies of the operative CBAs, which are indeed lengthy. This is clearly not an abusive litigation tactic.

[16] As APWU acknowledges, Plaintiff remained a "bargaining unit member" and was due fair representation even after she terminated her union membership. (Doc. 123 at 2).

"A union member faces a considerable burden in proving a breach of duty." *Baird v. Burlington N. & Santa Fe Ry. Co.*, 24 F. App'x 629, 630 (8th Cir. 2001) (per curiam).

### (1) Post-Membership Representation

Plaintiff broadly alleges that APWU ceased providing fair representation after Plaintiff terminated her union membership. Plaintiff cites specifically to correspondence from Fred Wolfmeyer, President of the local APWU at the time, stating:

> Since you are not a member of this local union please do not send any more fax messages to the union hall because you are using union resources paid for by the dues money of all the union members of this local. You chose to 'get out' of the union so you are not entitled to the same benefits that the dues paying members enjoy. However, we still do represent you in these matters so go to the supervisor on your tour and let them know you wish to file a grievance on this issue. You will then be allotted time by your supervisor to meet with a steward on your tour and file a grievance. (Doc. 41-4 at 26).[17]

APWU acknowledges it has a legal obligation to "represent a non-member employee through collective bargaining and grievance representation." (Doc. 123 at 4).

Despite President Wolfmeyer's statement, a reasonable factfinder could not conclude that APWU failed to provide fair representation to Plaintiff after she terminated her membership. It is apparent from the record that Plaintiff filed numerous complaints with APWU, many of them meritless and without using the proper APWU grievance form. (Doc. 121-1 at ¶ 4). Regardless, APWU filed 14 grievances on Plaintiff's behalf *after* termination of her membership, and many of them were successful. (Doc. 121 at ¶ 7). President Wolfmeyer's statement was factually correct, as a non-member employee is not entitled to the same benefits as dues paying members. He also explicitly clarified, however, that APWU "still do[es] represent you in these matters." (Doc. 41-4

---

[17] President Wolfmeyer has attempted to clarify that the fax machine was restricted to dues paying members "because membership dues pay the cost of the fax machine." (Doc. 121-1 at ¶ 17). President Wolfmeyer explicitly informed Plaintiff, however, that she was free to call the union hall. Whether Plaintiff should have been permitted to fax complaints is not material, especially given grievances are supposed to be submitted at the steward level. (*Id.*).

at 26). Because APWU extensively pursued grievances on behalf of Plaintiff after termination of her membership, a reasonable factfinder could not conclude that APWU ceased providing fair representation upon such termination.

### (2) Workers' Compensation Retaliation

Plaintiff alleges that APWU retaliated against her for filing a claim with the Office of Workers' Compensation Programs ("OWCP"). (Doc. 41 at ¶ 1). At the outset, this claim does not hold water because the Federal Employee Compensation Act ("FECA") "does not provide 'a cause of action to an employee who claims he [or she] was discharged in retaliation for filing a FECA claim.'" *Schrupp v. Brennan*, No. 3:18-CV-00095-SMR-HCA, 2019 WL 1198742, at *2 (S.D. Iowa Mar. 13, 2019) (quoting *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 940 F.2d 704, 709 (D.C. Cir. 1991)).

In the alternative, applying standard principles for retaliation claims, Plaintiff fails to demonstrate retaliatory motive. As APWU notes, "APWU does not pay out money as a result of a valid [workers' compensation] claim and does not have any statutory or contractual role in processing or enforcing" such claims. (Doc. 123 at 6-7). It does not stand to reason that APWU would retaliate against Plaintiff for filing a claim which has no effect on APWU. Plaintiff has not come forward with specific facts establishing a genuine issue for trial as to whether APWU retaliated against her for making workers' compensation claims.

### (3) Grievance Claims

Plaintiff alleges that APWU failed to meaningfully pursue numerous grievances. The Supreme Court has held that a union breaches its duty of fair representation "when it 'arbitrarily ignore[s] a meritorious grievance or process[es] it in [a] perfunctory fashion." *Int'l Broth. of Elec.*

*Workers v. Foust*, 442 U.S. 42, 47 (1979) (quoting *Vaca*, 386 U.S. at 191). A union's conduct is arbitrary when its "behavior is so far outside a wide range of reasonableness as to be irrational." *Smith v. United Parcel Serv.,* 96 F.3d 1066, 1068 (8th Cir. 1996) (quoting *Beavers v. United Paperworks Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995)). The Eighth Circuit has held that a "union acts in a perfunctory manner when it acts 'without concern or solicitude' or gives a member's grievance 'only cursory attention.'" *Martin v. Am. Airlines, Inc.*, 309 F.3d 601, 606-07 (8th Cir. 2004) (quoting *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1357 (8th Cir. 1984)). Failure to pursue a grievance is only actionable if the underlying grievance is meritorious. *See Natoli v. Dist. Lodge No. 837, Int'l Ass'n of Machinists Aerospace Workers AFL-CIO*, No. 4:14-CV-02017-JCH, 2015 WL 1020002 (E.D. Mo. Mar. 9, 2015).

   a.  Reassignment

Plaintiff contends that APWU failed to fairly represent her when she was denied her requested reassignment to the Belleville, Illinois USPS facility in 2018. (Doc. 121 at ¶ 17). Plaintiff contacted multiple people at APWU regarding her reassignment grievance. (Doc. 41 at ¶¶ 71-77; 82; 92; 98-100). These persons repeatedly informed Plaintiff that her grievance was meritless and APWU does not have jurisdiction over transfers between facilities. (Doc. 121 at ¶¶ 17-18). Plaintiff has not responded to these factual claims, which are buttressed by President Wolfmeyer's sworn affidavit. (Doc. 121-1 at ¶¶ 13-14). Finally, despite its belief that Plaintiff's complaint lacked merit, APWU ultimately filed a grievance on Plaintiff's behalf. The grievance was denied both for being untimely and lacking merit. (Doc. 121 at ¶ 22).

A reasonable factfinder could not conclude that APWU arbitrarily ignored Plaintiff's meritorious grievance or processed it in a perfunctory fashion. Instead, the record reflects that APWU considered the arguments presented by Plaintiff's grievance and reasonably concluded that

they lacked merit. APWU pursued the grievance despite these reasonable beliefs, moreover, and Plaintiff has provided no evidence to suggest that such pursuit was perfunctory.

### b.  Continuation of Pay

Plaintiff contends that APWU failed to fairly represent her when it declined to pursue grievances relating to USPS' alleged failure to provide Continuation of Pay ("COP") wages relating to both 2016 and 2018 injuries. (Doc. 41 at ¶¶ 55, 90, 94-95). APWU makes two responses: first, the claim regarding the 2016 injury was untimely and could not be pursued under 5 U.S.C. §§ 8124(b); 8128(a). Second, and more critically, COP is awarded through the Department of Labor ("DOL") (as opposed to USPS), and APWU does not have a CBA with the DOL. (Doc. 121 at ¶ 10). APWU was willing to assist Plaintiff with filing an appeal to the DOL, but Plaintiff did not provide the necessary information. (*Id.*).

"The duty of fair representation does not ordinarily apply to rights a worker can enforce independently – such as filing a workers' compensation claim." NATIONAL LABOR RELATIONS BOARD, RIGHT TO FAIR REPRESENTATION, http://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/employees/right-to-fair-representation (last visited Nov. 19, 2020). Under the terms of the CBA and applicable law, APWU's duty of fair representation did not extend to claims regarding COP wages. Regardless, Plaintiff has not demonstrated that her COP claims were meritorious or that APWU's failure to pursue the grievances was unreasonable. Therefore, a reasonable factfinder could not conclude that APWU violated its duty of fair representation.

### c.  Working Without Partner

Plaintiff contends that APWU failed to fairly represent her by not effectively pursuing Plaintiff's grievances regarding denial of a partner. (Doc. 41 at ¶¶ 79, 86, 88, 91). APWU

acknowledges that this is a "serious issue" and states it has "been addressing it with the USPS on multiple fronts for some time." (Doc. 123 at 9). The APWU SUMF, which has been admitted for purposes of this motion for summary judgment, explains how Plaintiff's grievances were handled:

> [APWU] has carefully instructed the bargaining unit on how to properly bring this [issue of failing to provide a partner] to the attention of the stewards so it can be addressed, and has made the proper forms available at every union booth. Plaintiff repeatedly failed to raise the issue in a manner that provided the stewards with the necessary information to move forward on her behalf. **Once she did, APWU filed 5 grievances on her behalf over the issue, with the result that [P]laintiff has been compensated hundreds of dollars for working without a partner**. (Doc. 121 at ¶ 23) (emphasis added).

Because APWU filed multiple successful grievances regarding USPS' failure to provide a partner, a reasonable factfinder could not conclude that APWU breached its duty of fair representation.

### d.  Moved Among Machines

Plaintiff contends that APWU failed to fairly represent her on the issue of being moved between machines during shift. (Doc. 41 at ¶¶ 91, 102, 110). Plaintiff has not demonstrated that such movement is prohibited under the CBA or any other agreement. As explained by President Wolfmeyer, the CBA "gives management considerable flexibility to move employees to meet operational needs, so long as they are doing so within the employee's qualifications and bid . . . . In each case complained of by [Plaintiff] she has been moved within her bid . . . and there has been an unmet operational need that preceded the move." (Doc. 121-1 at ¶ 10(e)). Despite the movement among machines being permitted under the CBA, APWU did file multiple grievances alleging that Plaintiff was being moved in a discriminatory fashion. (Doc. 121 at ¶ 24). Because Plaintiff's grievances were not meritorious and APWU still pursued the grievances in a non-perfunctory manner, a reasonable factfinder could not conclude that APWU breached its duty of fair representation.

31

e.   Excessive Supervision

Plaintiff alleges that APWU failed to fairly represent her after instances when she was excessively supervised. Plaintiff claims that a supervisor was "over observing" her and she was yelled at about keeping her ledge loaded. (Doc. 41 at ¶¶ 80-82). APWU describes the "gist" of these complaints as Plaintiff "being required to work hard." (Doc. 123 at 11). APWU argues that "[s]upervisors have every right to observe an employee's performance" and further notes that there was "nothing to grieve" because no adverse employment action was taken against Plaintiff. (Doc. 121 at ¶ 15). If a union reasonably and in good faith determines that a complaint lacks merit, it need not grieve the complaint. *See Martin*, 390 F.3d at 606 ("A breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious. Rather, a breach occurs when a union makes an arbitrary decision as to the merits of an employee's grievance."). Because Plaintiff did not have a meritorious claim regarding excessive supervision, and because there is no evidence that APWU's declining to grieve such a claim was unreasonable, a reasonable factfinder could not conclude that APWU breached its duty of fair representation.

f.   Unjust Discipline

Plaintiff's final allegation is that APWU failed to fairly represent her when Plaintiff was subjected to unjust discipline. In one instance, Plaintiff was apparently disciplined for abandonment of assignment. (Doc. 41 at ¶ 62). APWU filed a grievance over this event and the discipline was rescinded. (Doc. 121 at ¶ 13; Doc. 41 at ¶ 67). Clearly, APWU did not breach its duty of fair representation by successfully grieving this action.

Plaintiff also claims that her supervisor threatened to discipline her if the mail was delayed. (Doc. 41 at ¶ 83). APWU reasonably concluded that no grievance could be filed because "there was nothing to grieve." (Doc. 123 at 11). Finally, Plaintiff argues that APWU should have filed a

grievance when Plaintiff was "mean-mugged" by a co-worker. (Doc. 41 at ¶ 85). APWU determined that there was nothing to grieve because the co-worker's action was not overtly threatening. (Doc. 121-1 at ¶ 22). Because APWU either successfully pursue grievances relating to unjust discipline or reasonably determined that there was no action to grieve, a reasonable factfinder could not conclude that APWU breached its duty of fair representation.

## V.      CONCLUSION

As to USPS, Plaintiff's Fourth Amended Complaint alleges violations of the FECA, Title VII, ADEA, and Rehabilitation Act. Plaintiff claims that she experienced disparate treatment because of her race, age, gender, and disability status, and that she was retaliated against for engaging in protected activity. Plaintiff contends that this mistreatment and retaliation amounted to a hostile work environment. It is clear from the record that Plaintiff suffered a serious injury at work and in certain instances was affected by administrative errors at USPS (all of which were subsequently corrected). Plaintiff has not, however, come forward with specific facts permitting a reasonable factfinder to conclude that these claims constituted adverse employment action either individually or in the aggregate, established a hostile work environment, were in any way related to Plaintiff's membership in protected classes, or were guided by a retaliatory motive. Having carefully reviewed Plaintiff's arguments and the facts underlying this dispute, the Court finds that USPS is entitled to summary judgment on all of Plaintiff's claims.

As to APWU, Plaintiff was required to come forward with specific facts demonstrating a genuine issue for trial as to whether APWU breached its duty of fair representation. Plaintiff instead abandoned her claims by failing to substantively respond to APWU's motion. As to each claim alleged in Plaintiff's Fourth Amended Complaint, APWU has demonstrated that there is no evidence to sustain a recovery by Plaintiff and APWU is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant USPS' Motion for Summary Judgment (Doc. 75) and Defendant APWU's Motion for Summary Judgment (Doc. 120) are both **GRANTED**. A separate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant USPS' Motion for this Case to Proceed Without Discovery (Doc. 137) is **DENIED as moot.**


Dated this 20th day of November, 2020.


_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE